```
              IN THE UNITED STATES DISTRICT COURT

                 FOR THE DISTRICT OF DELAWARE
```

ROBERT MCCORMICK,                  :
                                   :
        Plaintiff,                 :
                                   :
    v.                             :  Civil Action No. 08-450-JJF
                                   :
MICHAEL J. ASTRUE,                 :
Commissioner of Social             :
Security,                          :
                                   :
        Defendant.                 :
                                   :
                                   :

Steven L. Butler, Esquire of LINARDUCCI & BUTLER, New Castle, Delaware.
Of Counsel: David F. Chermol, Esquire of CHERMOL & FISHMAN, LLC, Philadelphia, Pennsylvania
Attorney for Plaintiff.

David C. Weiss, Esquire, United States Attorney, and Patricia A. Stewart, Esquire, Special Assistant United States Attorney, of the OFFICE OF THE UNITED STATES ATTORNEY, Wilmington, Delaware. Of Counsel: Eric P. Kressman, Esquire, Acting Regional Chief Counsel and Andrew C. Lynch, Esquire, Assistant Regional Counsel, of the SOCIAL SECURITY ADMINISTRATION, Philadelphia, Pennsylvania.

Attorneys for Defendant.

---

**MEMORANDUM OPINION**

April 30, 2010
Wilmington, Delaware

**Farnan, District Judge.**

Presently before the Court is an appeal pursuant to 42 U.S.C. § 405(g) filed by Plaintiff, Robert McCormick, seeking review of the final administrative decision of the Commissioner of the Social Security Administration (the "Administration") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-433. Plaintiff has filed a Motion For Summary Judgment (D.I. 8) requesting the Court to reverse the decision of the Commissioner and direct an award of benefits, or alternatively, to remand this matter to the Administration for further development and analysis. In response to Plaintiff's Motion, Defendant has filed a Cross-Motion For Summary Judgment (D.I. 10) requesting the Court to affirm the Commissioner's decision. For the reasons set forth below, Defendant's Cross-Motion For Summary Judgment will be granted, and Plaintiff's Motion For Summary Judgment will be denied. The decision of the Commissioner dated July 26, 2007, will be affirmed.

## BACKGROUND

### I. Procedural Background

Plaintiff filed his application for DIB on September 30, 2004, alleging disability since October 1, 2001, due to depression, asthma, possible diabetes, social phobia, attention-deficit/hyperactivity disorder ("ADHD") and neck strain/pain.

1

(Tr. 59-63, 79). Plaintiff later amended his onset of disability date to September 30, 2004. (Tr. 306). Plaintiff's application was denied initially and upon reconsideration. (Tr. 36-46). Thereafter, Plaintiff requested a hearing before an administrative law judge (the "A.L.J."). (Tr. 47). On July 26, 2007, the A.L.J. issued a decision denying Plaintiff's application for DIB. (Tr. 10-24). Following the unfavorable decision, Plaintiff timely appealed to the Appeals Council. (Tr. 8-9). On June 27, 2008, the Appeals Council denied Plaintiff's request for review (Tr. 3-5), and the A.L.J.'s decision became the final decision of the Commissioner. Sims v. Apfel, 530 U.S. 103, 107 (2000).

After completing the process of administrative review, Plaintiff filed the instant civil action pursuant to 42 U.S.C. § 405(g) seeking review of the A.L.J.'s decision denying his claim for DIB. In response to the Complaint, Defendant filed an Answer (D.I. 3) and the Transcript (D.I. 5) of the proceedings at the administrative level.

Thereafter, Plaintiff filed a Motion For Summary Judgment and Opening Brief in support of the Motion. In response, Defendant filed a Cross-Motion For Summary Judgment and a Combined Opening Brief in support of his Cross-Motion and Opposition to Plaintiff's Motion requesting the Court to affirm the A.L.J.'s decision. Plaintiff has filed a Reply Brief.

Accordingly, the Court will proceed to address the merits of Plaintiff's claims.

## II. Factual Background

A. <u>Plaintiff's Medical History, Condition and Treatment</u>

At the time of his hearing before the A.L.J., Plaintiff was 48 years old and defined as a younger individual under 20 C.F.R. § 416.963. Plaintiff has a tenth grade education and past work experience as an animal hospital helper, state park maintenance worker, and a temporary employee doing cleaning, factory, production and warehouse work. (Tr. 351).

It is not disputed that Plaintiff's last date insured was June 30, 2005. Thus, Plaintiff had to prove he was disabled during the 9-month time period between September 30, 2004, his amended alleged onset of disability date, and June 30, 2005, his date last insured. Plaintiff's detailed medical history is contained in the record; however, the Court will provide a brief summary of the pertinent evidence.

Plaintiff has a significant history of mental and emotional problems predating his disability onset date. Plaintiff treated with Hal Kramer, M.D., since November 2000, and saw nurse practitioner Susanne Sharp Townsend, M.S., N.P.-C, for counseling. He was diagnosed with generalized anxiety disorder, ADHD, insomnia and mild to moderate agoraphobia. (Tr. 210, 229, 255). During the 9 month time frame at issue in this case, Dr.

3

Kramer and Ms. Townsend saw Plaintiff on three occasions. At his final visit in February 22, 2005, Dr. Kramer reported that Plaintiff was doing well on his medications and his insomnia was resolved. (Tr. 211). Dr. Kramer evaluated Plaintiff's mental status and noted that his energy was ok, and his concentration and focus were fair. Plaintiff displayed no tearfulness or signs or irritability. His affect was blunted; his mood was mildly anxious. His thought process was relevant and coherent and negative for suicidal or homicidal ideation. Plaintiff was not delusion and his insight and judgment were stable. (Tr. 210).

In mid-2005, a week before Plaintiff's insured status expired, Plaintiff treated with Samuel Romirowsky, Ph.D., a licensed psychologist. Six weeks after his insured status expired, he treated with Ivan Cohen, M.D., a psychiatrist. In addition to his earlier diagnoses, Plaintiff was also diagnosed with dependent personality disorder, social phobia, and problems with overreactivity.

Dr. Kramer, Dr. Romirowsky and Ms. Townsend each provided medical source statements opining that Plaintiff was seriously limited in several areas of functioning, including extreme deficits in social functioning and concentration, persistence or pace, and continual episodes of decompensation. Each clinician

assessed Plaintiff was a GAF of 50 or below.[1]

Plaintiff was also evaluated in January 2005, at the request of the Agency, by Richard Holmes, Ph.D., a licensed psychologist. Dr. Holmes assessed Plaintiff with a GAF of 45 and found him to have mostly mild and moderate limitations, except that Plaintiff would be severely limited in his ability to sustain work performance and attendance in a normal setting and moderately severely limited in his ability to relate with others and cope with normal work pressures. (Tr. 176-178).

In addition to these medical assessments, the record contains evidence that Plaintiff engaged in significant daily activities, including caring for 9 cats, doing household chores, yard work, grocery shopping three or four times per week, and reading for extended periods of time. Plaintiff testified at the administrative hearing two years after his date last insured, that he could lift 50 pounds, stand for a few hours, and "walk about five miles if [he] had to." (Tr. 317). Plaintiff also testified that he continued to care for his cats, attended church services on holidays, and attended Bible study classes "on a regular basis" on Friday nights. (Tr. 337, 348). Plaintiff testified that he has significant difficulties being in crowded

---

[1] A GAF score of between 41 to 50 corresponds with an individual having "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, or frequent shoplifting) or serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DSM-IV at 32.

areas, and that he often feels overwhelmed, anxious and depressed.

      B.    The A.L.J.'s Decision

At the hearing, Plaintiff was represented by counsel, and Plaintiff and his wife testified. The A.L.J. consulted a vocational expert and asked her to consider a hypothetical person with Plaintiff's age and background. The A.L.J. went on to add the following:

> With an IQ of 94. Suffering from various impairments. He has some degenerative disc disease at the cervical area. He has asthma that's fairly well controlled by his medications and he carries the diagnosis of attention deficit hyperactive disorder and some depression with agoraphobia. It does cause him to have moderate pain, discomfort, depression, anxiety. He indicates in his testimony [that he] has occasional anxiety attack[s], all of which are somewhat related by the medications without any side effects and Doctor, if I find that he needs to have simple, routine, un-skilled jobs with low stress, low concentration, low memory, able to attend schedules and complete tasks, and most importantly jobs that would have little interaction with co-workers, supervisors and fellow workers. Lift 10 pounds frequently and 20 on occasion, probably more. Sit for an hour, stand for an hour on an alternate basis during an eight hour day. He would have to avoid temperature and humidity extreme[s] and probably heights and hazardous machinery and finally importantly jobs that would allow him to avoid noise in the work place, odors, gases, fumes, dust, chemicals as a result of his asthmatic condition but would seem to be able with those limitations to do light work.

(Tr. 352-353). The vocational expert responded that such a person could perform the following jobs (1) inspector with 800 jobs locally and 56,000 jobs nationally, (2) packer and packaging worker with 500 jobs locally and 41,000 jobs nationally, and (3)

a machine tender with 800 jobs locally and 62,000 jobs nationally. (Tr. 353).

In his decision dated July 26, 2007, the A.L.J. found that Plaintiff suffered from depression, ADHD, generalized anxiety disorder and cervical strain. The A.L.J. found that Plaintiff had the residual functional capacity ("RFC") to perform light work limited to simple, routine unskilled work with low stress and requiring low concentration and memory, with little interaction with co-workers or supervisors, and no exposure to temperature extremes or humidity, heights, moving machinery, and further allowing him to alternate positions between sitting and standing every hour, and to avoid noise, odors, gases, dust fumes or other pulmonary irritants due to his asthma. (Tr. 17). Based on this residual functional capacity, the A.L.J. determined that Plaintiff could not perform his past relevant work, but could perform a number of other jobs existing in significant numbers in the national economy. Accordingly, the A.L.J. concluded that Plaintiff was not under a disability within the meaning of the Act.

## STANDARD OF REVIEW

Findings of fact made by the Commissioner of Social Security are conclusive, if they are supported by substantial evidence. Accordingly, judicial review of the Commissioner's decision is limited to determining whether "substantial evidence" supports

the decision. Monsour Medical Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986). In making this determination, a reviewing court may not undertake a de novo review of the Commissioner's decision and may not re-weigh the evidence of record. Id. In other words, even if the reviewing court would have decided the case differently, the Commissioner's decision must be affirmed if it is supported by substantial evidence. Id. at 1190-91.

The term "substantial evidence" is defined as less than a preponderance of the evidence, but more than a mere scintilla of evidence. As the United States Supreme Court has noted, substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 555 (1988).

With regard to the Supreme Court's definition of "substantial evidence," the Court of Appeals for the Third Circuit has further instructed, "A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores or fails to resolve a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence . . . or if it really constitutes not evidence but mere conclusion." Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983). Thus, the substantial evidence standard embraces a qualitative review of the evidence, and not merely a quantitative

approach. Id.; Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

## DISCUSSION

### I. Evaluation Of Disability Claims

Within the meaning of social security law, a "disability" is defined as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death, or which has lasted or can be expected to last, for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A), 1382(c)(a)(3). To be found disabled, an individual must have a "severe impairment" which precludes the individual from performing previous work or any other "substantial gainful activity which exists in the national economy." 20 C.F.R. §§ 404.1505, 416.905. In order to qualify for disability insurance benefits, the claimant must establish that he or she was disabled prior to the date he or she was last insured. 20 C.F.R. § 404.131, Matullo v. Bowen, 926 F.2d 240, 244 (3d Cir. 1990). The claimant bears the initial burden of proving disability. 20 C.F.R. §§ 404.1512(a), 416.912(a); Podeworthy v. Harris, 745 F.2d 210, 217 (3d Cir. 1984).

In determining whether a person is disabled, the Regulations require the A.L.J. to perform a sequential five-step analysis. 20 C.F.R. §§ 404.1520, 416.920. In step one, the A.L.J. must

9

determine whether the claimant is currently engaged in substantial gainful activity.  In step two, the A.L.J. must determine whether the claimant is suffering from a severe impairment.  If the claimant fails to show that his or her impairment is severe, he or she is ineligible for benefits. <u>Plummer v. Apfel</u>, 186 F.3d 422, 427 (3d Cir. 1999).

If the claimant's impairment is severe, the A.L.J. proceeds to step three.  In step three, the A.L.J. must compare the medical evidence of the claimant's impairment with a list of impairments presumed severe enough to preclude any substantial gainful work.  <u>Id.</u> at 428.  If the claimant's impairment meets or equals a listed impairment, the claimant is considered disabled. If the claimant's impairment does not meet or equal a listed impairment, the A.L.J.'s analysis proceeds to steps four and five.  <u>Id.</u>

In step four, the A.L.J. is required to consider whether the claimant retains the residual functional capacity to perform his or her past relevant work.  <u>Id.</u>  The claimant bears the burden of establishing that he or she cannot return to his or her past relevant work.  <u>Id.</u>

In step five, the A.L.J. must consider whether the claimant is capable of performing any other available work in the national economy.  At this stage the burden of production shifts to the Commissioner, who must show that the claimant is capable of

10

performing other work if the claimant's disability claim is to be denied. Id. Specifically, the A.L.J. must find that there are other jobs existing in significant numbers in the national economy, which the claimant can perform consistent with the claimant's medical impairments, age, education, past work experience and residual functional capacity. Id. In making this determination, the A.L.J. must analyze the cumulative effect of all of the claimant's impairments. At this step, the A.L.J. often seeks the assistance of a vocational expert. Id. at 428.

**II. Whether The A.L.J.'s Decision Is Supported By Substantial Evidence**

By his Motion, Plaintiff contends that the A.L.J.'s decision is not supported by substantial evidence. Specifically, Plaintiff contends that the A.L.J. (1) erred in his listing analysis by failing to address the treating source opinions in regard to the criteria for the applicable listings, in particular the issue of decompensation; (2) erred in weighing the treating source opinions; (3) erred in failing to evaluate Plaintiff's dependent personality disorder; (4) erred in failing to consider the GAF score provided by Dr. Ruoff during Plaintiff's vocational rehabilitation evaluation in October 2003; (5) erred in failing to assess the credibility of witness testimony; (6) erred in substituting his own lay judgment for the unanimous opinions of all treating and examining mental health professionals; and (7) erred in formulating a hypothetical question to the vocational

11

expert which did not include all of Plaintiff's established limitations.

The opinion of a treating physician is generally given controlling weight. However, an opinion of a treating physician that is not supported by medically acceptable clinical and laboratory diagnostic techniques and is not consistent with the other substantial evidence in the case is not entitled to controlling weight. 20 C.F.R. § 404.1527(d)(2). "A treating physician's opinion may be afforded 'more or less weight depending upon the extent to which supporting explanations are provided.'" Foley v. Comm'r of Soc. Sec., 349 Fed. Appx. 805, *2 (3d Cir. 2009) (citing Brownawell v. Comm'r of Soc. Sec., 554 F.3d 352, 355 (3d Cir. 2008) (citation and internal quotations omitted)). If the treating physician's opinion is not given controlling weight, the A.L.J. is required to explain his or her reasons for discounting or affording less weight to the opinion. Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991); 20 C.F.R. § 404.1527(d)(2) (factors to consider in assessing medical opinions).

Plaintiff contends that the A.L.J. ignored the treating source opinions in this case and failed to properly analyze them. The Court disagrees. The A.L.J. considered each of the three treating source opinions in this case in light of the record evidence, noticed conflicts between the opinions and the

contemporaneous treatment notes such that the opinions would not be entitled to controlling weight, and then assessed these medical source opinions in light of the relevant factors. After a detailed analysis of each opinion, the A.L.J. concluded that these opinions were not controlling and entitled to only limited weight. (Tr. 21-22). In particular, the A.L.J. noted in the case of Dr. Kramer and Ms. Townsend that their treatment notes did not substantiate their opinions, and that their area of expertise as general practitioner's rendered their opinions outside their areas of specialty. In addition, with regard to Dr. Romirowsky, the A.L.J. noted the brief history he had with Plaintiff before rendering his opinion, and further noted that his treatment notes did not reflect the severity of the limitations indicated by Dr. Romirowsky.[2] The Court further notes that Dr. Romirowsky's opinion is inconsistent with the opinion of Dr. Cohen during the same time frame. The A.L.J.'s

---

[2] Plaintiff also contends that the A.L.J. erred in failing to evaluate Plaintiff's dependent personality disorder diagnosed by Dr. Romirowsky. However, it appears to the Court that while Dr. Romirowsky's "check the box" evaluation forms indicate that Plaintiff suffers from "dependent personality disorder," that diagnosis does not appear to be substantiated in his contemporaneous treatment notes. In any event, the Court concludes that further evaluation of Plaintiff's purported dependent personality disorder was not required in light of the A.L.J.'s treatment of Dr. Romirowsky's opinion, his extensive analysis of the totality of the evidence in this case, and the lack of evidence that Plaintiff's alleged personality disorder caused him any additional limitations other than those already noted and analyzed by the A.L.J. Hur v. Barnhart, 94 Fed. Appx. 130, *2 (3d Cir. 2004) (citing Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001).

characterization of these medical source opinions in light of the treatment record is accurate, and the Court concludes that the A.L.J. provided sufficient rationale for his decision to give the opinions of Dr. Kramer, Dr. Romirowsky and Ms. Townsend less weight.

Plaintiff also contends that the A.L.J. failed to consider the treating source opinions in his listings analysis. Plaintiff points out that the A.L.J.'s assessment of the treating source opinions is in the context of the RFC assessment. However, the Court will not discount the A.L.J.'s analysis of the treating source opinions because it did not specifically occur in the context of the listings. The A.L.J.'s assessment of the treating source opinions applies with equal force to the listings, and the A.L.J.'s decision not to give controlling weight to the treating source opinions is consistent with his conclusions that the listing criteria were not satisfied. Indeed, the A.L.J. indicated in his opinion that he credited Dr. Holmes opinion over the opinions of the treating sources, and Dr. Holmes opinion does not support the criteria needed to satisfy a listing. Accordingly, the Court cannot conclude that the A.L.J. erred in his analysis of whether Plaintiff met a listing.

Plaintiff contends that the A.L.J. erred in failing to consider the GAF score of 42 provided by Dr. Ruoff during his vocational rehabilitation evaluation of Plaintiff. However, Dr.

Ruoff's evaluation occurred in October 2003, prior to the date of onset. Further, the Court notes that the GAF score, in and of itself, provides no insight into any functional limitations Plaintiff may have had during the relevant time frame. Indeed, Dr. Ruoff's evaluation noted that Plaintiff's depression was "mild" as indicated by various clinical tests and goes on to discuss vocational areas that Plaintiff was interested in pursing. (Tr. 171). During this time frame, Plaintiff believed he could work, and in any event, Dr. Ruoff's evaluation was not conclusive as to Plaintiff's abilities and/or limitations. In this regard, Dr. Ruoff noted that further "discussion with [Plaintiff's] treatment providers is strongly recommended in order to better assess [Plaintiff's] level of emotional impairment." (Tr. 172). Accordingly, the Court cannot conclude that the A.L.J. erred in failing to consider Dr. Ruoff's evaluation which predated the disability onset date in this case. See Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 204 (3d Cir. 2008) (noting that the A.L.J. is entitled to overlook evidence that is not pertinent or probative of disability).

  Similarly, the Court finds no error in the A.L.J.'s credibility assessments. The A.L.J. specifically addressed the testimony of Plaintiff's wife in his decision. The testimony of Plaintiff's wife was consistent with the testimony of Plaintiff, and the A.L.J. found such testimony to be not entirely credible

15

in light of the medical evidence in the record, which the A.L.J. explained at great length. Accordingly, the Court cannot conclude that the A.L.J.'s credibility assessments were erroneous.

As for Plaintiff's contention that the A.L.J. erroneously substituted his opinion for the opinions of Plaintiff's treating medical sources and failed to provide an adequate hypothetical to the vocational expert, the Court concludes that the A.L.J.'s analysis was not erroneous and is supported by substantial evidence. The A.L.J. did not assert his own medical opinions, but instead based his decision on credible and substantial evidence in the record, including the opinion of Dr. Holmes, the opinion of another reviewing state agency medical source, the significant extent of Plaintiff's activities, and the contemporaneous treatment notes of the medical source opinions, which contradicted the extent and severity of the impairments alleged by Plaintiff. The Court further concludes that the A.L.J.'s hypothetical took into account all of Plaintiff's credible limitations. Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). Accordingly, the Court will affirm the decision of the Commissioner denying Plaintiff's application for DIB.

## CONCLUSION

For the reasons discussed, the Court will grant Defendant's Cross-Motion For Summary Judgment and deny Plaintiff's Motion For

16

Summary Judgment.  The decision of the Commissioner dated July 26, 2007 will be affirmed.

An appropriate Order will be entered.